UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Doreen Ratliff Arseneau

   v.                                    Civil No. 17-cv-398-LM
                                             Opinion No. 2018 DNH 161
Nancy A. Berryhill, Acting
Commissioner of Social Security


**O R D E R**

Doreen Arseneau seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits.  Arseneau moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm.  For the reasons discussed below, the decision of the Acting Commissioner is affirmed.


**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the [Administrative Law Judge] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  42 U.S.C. § 405(g); see also Fischer v.

Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, id. § 404.1545(a)(1), and her past relevant work, id. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ proceeds to Step Five,

2

in which the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment. See id. § 404.1520(a)(4)(v).

## BACKGROUND

A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 13). The court provides a brief summary of the case here.

On September 22, 2014, Arseneau filed an application for disability insurance benefits, alleging a disability onset date of June 6, 2014, when she was 51 years old. She alleged a disability due to a benign brain tumor and Meniere's disease, an inner ear disorder that can cause symptoms such as hearing loss, vertigo, and dizziness.

After Arseneau's claim was denied, she requested a hearing in front of an ALJ. On March 8, 2016, the ALJ held a hearing. Arseneau, who was represented by an attorney, appeared and testified by video.

On March 30, 2016, the ALJ issued an unfavorable decision. She found that Arseneau had the following severe impairments: diabetes mellitus, benign positional vertigo, hypertension, bilateral low frequency hearing loss, obesity, and fibromyalgia. The ALJ also found that Arseneau's obstructive sleep apnea, benign brain tumor, and osteoarthritis of the knee were not

severe impairments.  She further found that Arseneau had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b), with certain limitations.

In assessing Arseneau's residual functional capacity, the ALJ gave significant weight to the opinion of Dr. Natacha Sochat, a state agency physician who reviewed Arseneau's medical records.  The ALJ ultimately adopted a more restrictive RFC assessment than was contained in Dr. Sochat's opinion.[1]

Elizabeth C. Laflamme, an impartial vocational expert, testified at the hearing.  In response to hypotheticals posed by the ALJ, Laflamme testified that a person with Arseneau's RFC could perform jobs that exist in significant numbers in the national economy, including price marker, laundry classifier, and mail room clerk.  Based on Laflamme's testimony, the ALJ found at Step Five that Arseneau was not disabled.

On July 10, 2017, the Appeals Council denied Arseneau's request for review, making the ALJ's decision the Acting Commissioner's final decision.  This action followed.

## DISCUSSION

Arseneau raises three broad claims of error on appeal.  She argues that the ALJ erred in (1) evaluating the severity and

---

[1] Specifically, Dr. Sochat opined that Arseneau had no exertional limitations.  The ALJ, however, found that Arseneau could perform light work with certain restrictions.

effect of Arseneau's impairments, (2) evaluating Arseneau's subjective complaints and symptoms, and (3) weighing the medical opinions in the record. The court addresses each argument below.

I. Arseneau's Impairments

Arseneau contends that the ALJ erred at Step Two in finding that her bilateral knee pain, sleep apnea, and depression were not severe impairments.[2] She also argues that the ALJ erred in failing to consider the effects of Arseneau's obesity on her RFC assessment, despite the ALJ finding that it was a severe impairment.

A. Step Two - Severe Impairments

At Step Two, the ALJ determines based on the record evidence whether the claimant has one or more medically determinable impairments that are severe. 20 C.F.R. § 404.1520(a)(ii). An impairment or a combination of impairments is severe at Step Two if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. § 404.1520(c). It is the claimant's burden at

_____

[2] As discussed further infra, although the ALJ specifically addressed Arseneau's knee pain and sleep apnea and found them to be non-severe, the ALJ did not address Arseneau's depression.

Step Two to show that she has a medically determinable severe impairment. Bowen v. Yuckert, 482 U.S. 137, 146, 149 (1987).

### 1. Bilateral Knee Pain

In her decision, the ALJ addressed Arseneau's complaints of bilateral knee pain. The ALJ noted that an MRI of Arseneau's knee revealed "some really minor degenerative changes" and that Arseneau testified at the hearing that her knee pain had improved with cortisone injections. Admin. Rec. at 48. The ALJ concluded that Arseneau's bilateral knee pain was therefore non-severe.

Arseneau contends that the ALJ erred in making that determination because Arseneau testified that her knee pain was going to be reevaluated in "a few months" and that "if the pain starts to come back again we'll go into MRI and seeing the possibilities if there's a need for surgery." Doc. no. 10-1 at 4. She also notes that medical records showed that she had fallen several times because of Meniere's disease, including one time when she landed on her knees and "significantly injured her left patella." Id. at 5.

Arseneau has not shown that the ALJ committed error at Step Two regarding her bilateral knee pain. The fall she references occurred in March 2014, see Admin. Rec. 361-63, before she received the cortisone injections that she testified helped her

knee pain.[3]  In addition, her testimony that she could eventually need surgery if her knee pain returns is insufficient to show that her knee pain was severe during the relevant time, particularly because she points to no evidence in the record that her symptoms persisted after her cortisone injections.  See Leech v. Berryhill, No. 2:16-CV-00487-GZS, 2017 WL 2817023, at *4 (D. Me. June 28, 2017), report and recommendation adopted by 2017 WL 3185154 (D. Me. July 26, 2017) (noting that reliance on speculation as to the future effect of an impairment is insufficient to show reversible error at Step Two).  Therefore, Arseneau has not shown that the ALJ erred in her Step Two determination with regard to Arseneau's bilateral knee pain.

   2.   Sleep Apnea

   The ALJ found that Arseneau's sleep apnea was not a severe impairment, noting that the condition is "generally well corralled with use of a CPAP machine."  Admin. Rec. at 48.  Arseneau contends that this finding was in error because she testified that she continues to experience fatigue even with the use of a CPAP machine, and her medical records show that she complained about her fatigue consistently.

---

[3] The exact dates Arseneau received the cortisone injections are unclear, other than that they occurred after March 2014 and her final one occurred in September 2015.

The only medical record Arseneau cites concerning her sleep apnea is a March 2014 progress note from Dartmouth-Hitchcock Medical Center. This note contains Arseneau's subjective complaints about her sleep apnea without any medical evidence to corroborate her symptoms. A claimant's subjective complaints alone, however, do not provide a basis for an impairment. See 20 C.F.R. § 404.1528 (A claimant's "statements alone are not enough to establish that there is a physical or mental impairment.");[4] see also Durgin v. Berryhill, No. 2:17-CV-00241-DBH, 2018 WL 1532668, at *4 (D. Me. Mar. 28, 2018), report and recommendation adopted by 2018 WL 2108012 (D. Me. May 7, 2018) (noting that statements in medical record reflecting plaintiff's subjective reports are not medical opinions). Further, a "claimant has the burden to show that any error at Step Two is outcome determinative." Chabot v. U.S. Soc. Sec. Admin., No. 13-cv-126-PB, 2014 WL 2106498, at *10 (D.N.H. May 20, 2014). Thus, even if the ALJ had not properly evaluated Arseneau's sleep apnea, any error is harmless because Arseneau has not pointed to any medical evidence to show that the diagnosis

---

[4] 20 C.F.R. § 404.1528 was removed effective March 27, 2017, after the ALJ issued her decision. The revised version of 20 C.F.R. § 404.1529, which replaced § 404.1528, contains similar language. See 20 C.F.R. § 404.1529(a) ("There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) . . . .").

caused any functional limitations.  See Caswell v. Colvin, No. 13-cv-552-JD, 2014 WL 4749456, at *9 (D.N.H. Sept. 24, 2014) ("Any error in failing to address limitations caused by Caswell's obesity and sleep apnea is harmless because Caswell has not provided evidence to show that those diagnoses caused any functional limitations.").

### 3.  Depression

Arseneau asserts that she was diagnosed with depression by her treating physicians and that her treatment records indicate that her depression caused functional limitations.  She notes that the ALJ did not discuss Arseneau's depression at all in the decision, let alone make a finding as to the severity of the impairment as required at Step Two.

While a claimant bears the burden at Steps One through Four, the Acting Commissioner retains an obligation "to develop an adequate record from which a reasonable conclusion can be drawn."  Jones v. Berryhill, No. 16-11011-DJC, 2017 WL 3726018, at *9 (D. Mass. Aug. 29, 2017).  Nevertheless, when a claimant is represented by counsel, the ALJ "should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored."  Faria v. Comm'r of Social Sec., 187 F.3d 621, 1998 WL 1085810, at *1 (1st Cir. 1998).

Arseneau has not shown that the ALJ committed any error with regard to Arseneau's depression. Because Arseneau was represented by counsel, the ALJ was under no heightened duty to develop the record, see Morris v. Astrue, No. 11-cv-248-JL, 2012 WL 4499348, at *9 (D.N.H. Sept. 28, 2012), and the ALJ was entitled to rely on Arseneau's counsel to structure the case, see Faria, 1998 WL 1085810, at *1. Arseneau did not include depression as one of her impairments in either her Disability Report or in her request for review and she did not testify at the hearing that she suffers from depression. Therefore, Arseneau has not shown that the ALJ erred in failing to address her depression.

Even if Arseneau had shown that the ALJ erred, however, any error is harmless. In her motion, Arseneau cites medical records from March 2014, which list depression as part of Arseneau's medical history, but do not show a current diagnosis of depression. Although it appears that Arseneau took medication for depression, see Admin. Rec. at 485-86, treatment records show that she was "stable" and "did well" with stressful events. Id. at 485. Further, Arseneau does not point to any medical records that would show any functional limitations from

her depression.  Therefore, even if the ALJ erred in not addressing Arseneau's depression, any error is harmless.[5]

B.  Obesity

Arseneau seeks reversal and remand on the basis that the ALJ found a severe impairment of obesity but failed to assess any resulting functional limitations, in contravention of Social Security Ruling ("SSR") 02-1p.  See Titles II & XVI: Evaluation of Obesity, SSR 02-1P, 67 Fed. Reg. 57859 (Sept. 12, 2002).  The Acting Commissioner contends that the ALJ appropriately explained the impact of Arseneau's obesity in her RFC assessment.

"The combined effects of obesity with other impairments may be greater than might be expected without obesity."  SSR 02-1P, 67 Fed. Reg. at 67863.  "SSR 02-1p requires an individualized assessment of the impact of obesity on a claimant's functioning."  Fothergill v. Astrue, No. 2:11-CV-247-DBH, 2012 WL 1098444, at *2 (D. Me. Mar. 29, 2012), report and

---

[5] Arseneau also notes that the ALJ "made no findings regarding the severity of her carpal tunnel syndrome."  Doc. no. 10-1 at 3.  To the extent Arseneau intended to argue that the ALJ erred at Step Two in not finding that her carpal tunnel syndrome was a severe impairment, that argument is unavailing.  As with Arseneau's depression, she failed to indicate on her Disability Report or request for review that she suffered from carpal tunnel syndrome, and she has pointed to no medical records that establish that she suffers from any functional limitations from the condition.

recommendation adopted by 2012 WL 1313488 (D. Me. Apr. 17, 2012); SSR 02-1p, 67 Fed. Reg. at 57862 ("An assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."). Thus, when an ALJ finds a severe impairment of obesity, she finds that "the plaintiff's obesity was determined to cause more than a slight limitation in work-related function" and must "describe how obesity affected the plaintiff's RFC." Kaylor v. Astrue, No. 2:10-CV-33-GZS, 2010 WL 5776375, at *3 (D. Me. Dec. 30, 2010), report and recommendation adopted by 2011 WL 487844 (D. Me. Feb. 7, 2011).

The ALJ found at Step Two that Arseneau's obesity was a severe impairment. The ALJ cited SSR 02-1p, noting that obesity may "increase the severity or functional limitations of the other impairments" and stated that she "has fully considered obesity in the context of the overall record of evidence" when making her RFC assessment. Admin. Rec. at 49.

In assessing Arseneau's residual functional capacity, the ALJ stated that an "individual assessment of the claimant supports a finding of Level I obesity, which when considered in combination with her other impairments, produce nonexertional limitations consistent with those outlined in the body of this decision." Id. at 52. The ALJ subsequently found that because

of "persistent pain from fibromyalgia and the effects of
obesity, the undersigned finds the claimant can never climb
ladders, ropes or scaffolds and she can occasionally kneel,
stoop, crouch, crawl and balance." Id.

Thus, the ALJ specifically identified the role that obesity
played in Arseneau's functional limitations and incorporated
those limitations in her RFC assessment. Therefore, the ALJ
complied with her obligations under SSR 02-1P. See Lobov v.
Colvin, No. CIV. 12-40168-TSH, 2014 WL 3386567, at *8 (D. Mass.
June 23, 2014) (holding that ALJ's statement that claimant's
obesity was a severe impairment and that it, in combination with
the claimant's other impairments, "caused significant limitation
in claimant's ability to perform basic work activities" was
sufficient under SSR 02-1P); Spencer v. Colvin, No. 1:13-CV-
00171-JAW, 2014 WL 1806862, at *5 (D. Me. May 7, 2014)
(affirming Commissioner's decision and noting that "[w]hile the
discussion of obesity is not expansive, the ALJ plainly
considered it in assessing Plaintiff's residual capacity").

In addition, Arseneau does not identify any evidence that
her obesity imposed greater functional limitations than those
found by the ALJ. Therefore, because Arseneau has not shown
that her obesity caused additional functional limitations, any
error by the ALJ is harmless. See, e.g., Jessica B. v.
Berryhill, No. 17-cv-294-NT, 2018 WL 2552162, at *7 (D. Me. June

3, 2018); Leonard v. Colvin, No. CV 15-155S, 2016 WL 3063853, at *11 (D.R.I. Mar. 29, 2016), report and recommendation adopted by 2016 WL 3077874 (D.R.I. May 31, 2016); Drouin v. Colvin, No. 1:14-CV-544-DBH, 2015 WL 7259562, at *4 (D. Me. Oct. 2, 2015), report and recommendation adopted by 2015 WL 7194881 (D. Me. Nov. 16, 2015).

For those reasons, Arseneau has not shown that the ALJ erred in evaluating the severity and effect of Arseneau's impairments.

II. Arseneau's Subjective Complaints and Symptoms

Arseneau contends that the ALJ improperly evaluated her subjective complaints and symptoms under SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). She argues that the ALJ should have evaluated her subjective complaints under SSR 16-3p, 82 Fed. Reg. 49462 (Oct. 25, 2017), which superseded SSR 96-7p and became effective March 27, 2016, three days prior to the date the ALJ issued her decision. Arseneau asserts that the ALJ's error led her to incorrectly evaluate Arseneau's complaints and requires reversal. The Acting Commissioner agrees that the ALJ applied the wrong Social Security Ruling to Arseneau's subjective complaints but argues that the error was harmless because the ALJ adhered to the regulatory language and factors required by SSR 16-3p.

A.     SSR 16-3p

SSR 96-7p required an ALJ to assess the applicant's "credibility" when assessing the "extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled."  SSR 96-7p, 61 Fed. Reg. at 34485.  "Following concerns raised by the Administrative Conference of the United States about symptom evaluation under that SSR, however, the SSA decided to 'eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy' to make clear that a 'subjective symptom evaluation is not an examination of an individual's character.'"  Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018) (quoting SSR 16-3p, 82 Fed. Reg. at 49463 & n.1).

"Thus, under SSR 16-3p, which supersedes SSR 96-7p, an ALJ determining whether an applicant has a residual functional capacity that precludes a finding of disability must 'evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities.'"  Id. (quoting SSR 16-3p, 82 Fed. Reg. at 49464).  "Moreover, SSR 16-3p provides that, in conducting that inquiry, the ALJ must 'examine the entire case record, including the objective medical evidence; an individual's statements about the

intensity, persistence, and limiting effects of symptoms;
statements and other information provided by medical sources and
other persons; and any other relevant evidence in the
individual's case record.'" Id. (quoting SSR 16-3p, 82 Fed.
Reg. at 49464).

B.   ALJ's Evaluation of Arseneau's Subjective Complaints

In evaluating Arseneau's subjective complaints, the ALJ
discussed Arseneau's testimony concerning the effects of her
dizziness, fatigue, and obesity.  The ALJ addressed the evidence
in the record that she found did not fully support Arseneau's
subjective complaints, which included her "longitudinal
treatment record" and medical records throughout 2014.  The ALJ
also noted that, although Arseneau claimed that she could not
perform the basic demands of competitive work, she was caring
for her "grandson who has multiple psychological issues."  Id.
at 51.  As a result, the ALJ concluded that Arseneau's
statements regarding the intensity, persistence, and limiting
effects of her symptoms were not credible to the extent that
they were inconsistent with the RFC assessment.

C.   Arseneau's Challenges to the ALJ's Evaluation

Arseneau raises three arguments to challenge the ALJ's
evaluation of Arseneau's subjective complaints about her
symptoms.  The court addresses each below.

First, Arseneau argues that the ALJ contravened SSR 16-3p's instruction that an ALJ "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 82 Fed. Reg. at 49465. The ALJ, however, did not violate that rule. While the ALJ did rely on the objective medical evidence in rejecting Arseneau's allegations, the ALJ also noted other factors, including Arseneau's daily activities and the fact that she cares for her grandson, the medical opinions, the frequency of her doctor's visits, and Arseneau's treatment regimens before and after her alleged onset date.

Second, Arseneau disputes the ALJ's characterization of a June 11, 2014 treatment note from Christopher Laurent, APRN. In her decision, the ALJ discussed the June 11, 2014 appointment with Laurent, noting that the appointment occurred a few days after Arseneau's alleged disability onset date. The ALJ noted Arseneau's statement during that appointment (as recorded by Laurent) that she needed a doctor to state that she had to be out of work for six months so that she can acquire disability benefits because she made too much money to be eligible otherwise. The ALJ also stated that despite Arseneau's testimony as to her long-term limited functional abilities, her

last physical exam prior to the June 2014 appointment had been approximately a year earlier and was within normal limits. See Admin. Rec. at 51.

Arseneau contends that the ALJ "erroneously implies that Ms. Arseneau had not had any medical treatment during the previous year, which is incorrect – the treatment note simply indicates that her last complete physical examination had been done approximately one year earlier." Doc. no. 10-1 at 8. The ALJ's decision, however, does not make such an implication, and instead simply notes that Arseneau's last physical exam had been a year earlier and was within normal limits. Arseneau does not dispute the accuracy of that statement and does not show any error.

Arseneau also notes that she had consistently described her difficulties with sustaining work activity prior to her June 2014 appointment. Arseneau appears to contend that the ALJ erred when she considered Arseneau's statement to Laurent that she needed to be out of work because she made too much money and was attempting to secure eligibility for social security disability benefits. Arseneau fails to identify any error in that analysis. An ALJ may consider a claimant's statements to her medical providers, including those that reflect on her reasons for seeking treatment or not pursuing treatment in the

past.  See, e.g., SSR 16-3p, 82 Fed. Reg. at 49466 (directing an ALJ to consider "possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"). Regardless, it does not appear that the ALJ took Arseneau's statement into account in reaching her decision and, therefore, any error is harmless.

Third, Arseneau argues that the ALJ erroneously concluded that her activities of caring for her grandson are inconsistent with her claimed symptoms.  She contends that the "demands of caring for a child at home, even a child with mental health issues, do not necessarily equate to the demands of sustaining gainful employment in the workplace."  Doc. no. 10-1 at 9.  The ALJ, however, did not cite Arseneau's ability to care for her grandson as evidence that she could engage in substantial gainful activity.  Rather, the ALJ discussed Arseneau caring for her grandson as evidence of her daily activities in evaluating her subjective complaints.  That is precisely what SSR 16-3p and corresponding social security regulations require an ALJ to consider.  See SSR 16-3p, 82 Fed. Reg. at 49465 (directing the ALJ to consider a claimant's daily activities when evaluating the effect of his or her symptoms); see also 20 C.F.R. § 404.1529(c)(3).

In short, none of these arguments justifies reversal.[6]

III. <u>Medical Opinions</u>

Arseneau contends that the ALJ erred in weighing the medical opinions in the record. Specifically, Arseneau argues that the ALJ erroneously gave little weight to Laurent and did not address the opinion of her treating podiatrist, Dr. William Schanlaber. Arseneau also notes that the ALJ gave great weight to the opinion of Dr. Sochat.

"An ALJ is required to consider opinions along with all other relevant evidence in a claimant's record." Ledoux v. Acting Comm'r, Social Sec. Admin., No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1).

---

[6] It is unclear whether Arseneau argues that the decision must be reversed because the ALJ cited SSR 96-7P instead of SSR 16-3p. To the extent she intended to make that argument, it is unavailing. Coskery, 892 F.3d at 5-6 (holding that regardless of whether the ALJ should have applied SSR 96-7p or SSR 16-3p, the ALJ's decision was supported by substantial evidence).

The ALJ analyzes the opinions of state agency consultants, treating sources, and examining sources under the same rubric. See id.; 20 C.F.R. § 404.1527(c). The ALJ must consider "the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, consistency with the medical opinions of other physicians," along with the doctor's expertise in the area and any other relevant factors. Johnson v. Berryhill, No. 16-cv-375-PB, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017).

The court addresses the opinions of Dr. Sochat, Laurent, and Dr. Schanlaber in turn.

A.    Dr. Sochat

As discussed supra, the ALJ gave significant weight to the opinion of Dr. Sochat, a state agency physician who did not examine Arseneau. The ALJ agreed with Dr. Sochat's opinion as to Arseneau's postural limitations and included them in her RFC assessment. The ALJ did not agree with Dr. Sochat's opinion that Arseneau had no exertional limitations, instead concluding that Arseneau was limited to performing light work.

In evaluating Dr. Sochat's opinion, the ALJ was mindful of the factors set forth in 20 C.F.R. § 404.1527(c) and SSR 96-6p,

see 1996 WL 374180, at *2 (July 2, 1996).[7]  The ALJ concluded that Dr. Sochat's opinion was entitled to significant weight because it was completed by an acceptable medical source who was familiar with the disability program and reviewed the evidence, provided a rationale for the opinion, and cited supporting evidence.

Although Arseneau notes that the ALJ gave Dr. Sochat's opinion significant weight, she does not appear to contend that the ALJ erred in doing so.  Without more, the court finds no error in the weight given to Dr. Sochat's opinion.

B.  <u>Laurent</u>

Laurent, a nurse practitioner, saw Arseneau every two or three months between May 2014 and February 2016.  On February 23, 2016, Laurent completed a Physical Impairment Medical Source Statement.  In that Statement, Laurent stated that Arseneau's impairments had existed since June 2014.  He opined that: (1) Arseneau frequently experienced pain or other symptoms severe enough to interfere with attention and concentration for simple work tasks; (2) she was incapable of even low stress jobs; (3) she could sit and stand/walk for less than 2 hours each in an 8-hour day; and (4) she needed to walk every 30 minutes for 5

---

[7] SSR 96-6p was in effect when the ALJ issued her decision. It has since been superseded by SSR 17-2p.

minutes.  Laurent concluded that Arseneau needed to shift

positions at will and take unscheduled breaks; she could

occasionally lift/carry less than ten pounds and rarely

lift/carry ten pounds; and she could occasionally look up and

down, turn her head to the side, and hold her head static.

The ALJ addressed Laurent's assessment in her decision,

noting that, as a nurse practitioner, Laurent was not an

acceptable medical source and therefore could not offer a

medical opinion under § 404.1527(a).  See 20 C.F.R. §

404.1513(a) (nurse practitioners not listed among those deemed

acceptable medical sources); Considering Opinions and Other

Evidence from Sources Who Are Not "Acceptable Medical Sources"

in Disability Claims, SSR 06-3p, 2006 WL 2329939 (rescission

eff. Mar. 27, 2017).[8]  Nevertheless, the ALJ addressed Laurent's

opinion and concluded that the medical record did not contain

objective medical evidence that supported Laurent's extreme

restrictions.  The ALJ also found that Arseneau's daily

activities were inconsistent with Laurent's assessment.

Arseneau challenges the ALJ's evaluation of Laurent's

opinion, asserting that the ALJ failed to articulate good

reasons for discounting Laurent's assessment.  An ALJ, however,

---

[8] "The commissioner rescinded SSR 06-03p effective for claims
filed on or after March 27, 2017."  Jessica B., 2018 WL 2552162,
at *6 (internal citations omitted).

need not provide "good reasons" for discounting the opinion of a non-acceptable medical source.  See Dale W. v. Berryhill, No. 2:17-CV-00213-JDL, 2018 WL 2278253, at *8 (D. Me. May 18, 2018); see also Robert L. v. Berryhill, No. 1:17-CV-00348-JDL, 2018 WL 3599966, at *9 (D. Me. July 27, 2018) (noting that with regard to a non-acceptable medical source under SSR 06-3p, an ALJ is obligated only to "explain the weight given to" her opinion "or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow [her] reasoning").

Regardless, even if Laurent were an acceptable medical source, the ALJ properly addressed his opinion.  Arseneau challenges the ALJ's evaluation of Laurent's opinion on several grounds, none of which has any merit.  Arseneau criticizes the ALJ for considering objective medical evidence to discount Laurent's opinion.  As discussed supra, however, under § 404.1527, an ALJ considers many factors in evaluating a medical source's opinion, including the supportability of the opinion by evidence in the record, the consistency with the medical opinions of other physicians, and any other relevant factors.[9]  Arseneau further criticizes the ALJ for not taking

_____

[9] Arseneau appears to conflate the standard for evaluating a claimant's subjective symptoms, provided in SSR 16-3p, with the standard for evaluating opinion evidence under § 404.1527.

into account her depression when evaluating Laurent's opinion. Laurent did not offer any opinion as to the effect of Arseneau's depression, however, and, as discussed supra, Arseneau does not point to any medical records that would show functional limitations due to depression.

Arseneau also contends that the ALJ erred when she found that Arseneau's ability to crochet was inconsistent with Laurent's opinion as to Arseneau's manipulative limitations. However, an ALJ may consider a claimant's daily activities in evaluating a provider's medical opinion. See Pressley v. Berryhill, No. CV 16-40050-TSH, 2017 WL 5760915, at *16 (D. Mass. Sept. 8, 2017) (holding that ALJ reasonably discounted weight given to a medical opinion because it was inconsistent with the claimant's reported daily activities); Reyes v. Berryhill, No. CV 16-10466-DJC, 2017 WL 3186637, at *12 (D. Mass. July 26, 2017) (holding that the ALJ properly relied upon claimant's daily activities in evaluating the medical records and opinion evidence). Here, the ALJ properly found that Arseneau's testimony that she crocheted was inconsistent with Laurent's opinion that she could use her hands only one percent of the day and her fingers five percent of the day. See Admin. Rec. at 656.

For those reasons, Arseneau has not shown any error in the ALJ's evaluation of Laurent's opinion.

C.    Dr. Schanlaber

Arseneau argues that the ALJ erred in failing to address the April 2014 treatment note of her treating podiatrist, Dr. William Schanlaber.[10]   She cites Dr. Schanlaber's treatment note, which states that Arseneau "would be best suited for the type of job that does not require extended standing, walking, etc." Doc. no. 10-1 at 12.

Assuming that Dr. Schanlaber's statement could be considered an opinion as to Arseneau's functional limitations, Arseneau has not shown that the ALJ's failure to consider the April 2014 treatment note warrants remand.   The treatment note states that Arseneau had "bilateral foot surgery" on December 19, 2013.[11]   Admin. Rec. at 317.   The note describes the appointment as a "post op check," and pertains to Arseneau's impairment due to the condition of her feet post-surgery.   Id. Arseneau points to no medical records from Dr. Schanlaber after April 2014 or to medical evidence in the record that suggest any limitations because of an impairment with her feet.   Further, Arseneau does not claim an impairment of her feet in support of

_____

[10] Arseneau describes Dr. Schanlaber's treatment note as being from May 2014, but she quotes from and cites to an April 2014 treatment note.   It does not appear that Arseneau saw Dr. Schanlaber after April 2014.

[11] The note describes the surgery as "plantar fascial release left heel, fifth metatarsal osteotomy left foot, flexor tenotomy of fourth and fifth right toes."   Admin. Rec. at 316.

her disability, and the ALJ was entitled to rely on Arseneau's counsel's construction of the case.  <u>See</u> <u>Faria</u>, 1998 WL 1085810, at *1.  Therefore, the ALJ did not err in failing to discuss the April 2014 treatment note.

### CONCLUSION

For the foregoing reasons, Arseneau's motion to reverse (doc. no. 10) is denied, and the Acting Commissioner's motion to affirm (doc. no. 12) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 14, 2018

cc:  Counsel of Record